GEORGE K. MARTIN, Respondent, v. JESSE F. PADDELFORD
          and FULLER P. KING, Appellants.

                    Third Department, May 8, 1918.

Trial — principal and agent — erroneous charge as to burden of
    disproving agency — error not harmless — hearsay — statements
    by alleged agent as to agency inadmissible.

Where the plaintiff sued to recover for materials and services alleged to
    have been furnished to the defendant for a highway improvement and
    the defendant contends that the person with whom the plaintiff made
    the bargain was not the defendant's agent but was an independent con-
    tractor to whom they had sublet part of the highway improvement, it
    was error for the court to charge in substance that the defendant had
    the burden of showing that said person was a subcontractor, for it was
    tantamount to charging that the defendant had the burden of establishing
    that no contracts were made with them by the plaintiff and his assignors.
So, too, it was error to charge in substance that when the plaintiff had
    established an apparent agency of the person with whom they dealt the
    burden of showing lack of agency fell upon the defendant.
In such action it was error to admit hearsay statements by the person with
    whom the plaintiff dealt to the effect that he was the agent of the defend-
    ant and such error was not cured by a further charge that such hearsay
    might be considered to show the amount due for work, labor and materials
    furnished, there being no contest on this latter issue.
Such error in the reception of evidence requires a reversal of a judgment
    for the plaintiff as they related directly to the only issue in the case.
JOHN M. KELLOGG, P. J., and LYON, J., dissented, with opinion.

APPEAL by the defendants, Jesse F. Paddelford and another,
from a judgment of the Supreme Court in favor of the plaintiff,
entered in the office of the clerk of the county of Broome
on the 26th day of June, 1917, upon the verdict of a jury, and
also from an order entered in said clerk's office on the 6th
day of July, 1917, denying defendants' motion for a new
trial made upon the minutes.

    H. C. & V. D. Stratton, for the appellants.

    A. Ray Humphrey [Arthur J. Ruland of counsel], for the
respondent.

H. T. KELLOGG, J.:
    The plaintiff, as the owner of nine separate claims for
materials furnished and services rendered by various persons

in connection with the performance by the defendants of a contract for highway improvement entered into by them with the State Highway Commission, brought this action, and recovered judgment thereupon. No question was made upon the trial as to the furnishing of the materials or the performance of the services. It was, however, in serious dispute whether any contracts for the materials and services were ever made with these defendants. The defendants contended that one McMahon, with whom the bargains were in nearly every instance made, was not their agent but an independent contractor, to whom they had sublet a portion of the highway improvement which they had engaged themselves to make. Upon this appeal reliance is chiefly placed by the defendants upon alleged errors of the trial court in his charge to the jury and in his rulings upon the admission of evidence.

A material error was committed by the court in charging the jury as follows: "When the defendants say that McMahon was a subcontractor, then they have the burden of proof in satisfying you that that is the fact." If the court had said that the burden of proceeding with the proof had fallen upon the defendants, after it had been shown that the defendants were the contractors who had engaged to build the road, and that the materials were furnished and the services rendered in connection with the road improvement, there doubtless would have been no error. The court, however, evidently had in mind no such legal principle, for the burden spoken of was the burden of "satisfying" the jury. This was tantamount to saying that the defendants had the burden of establishing that no contracts were made with them by the plaintiff and his assignors. The erroneous instruction thus given was contained in the main charge of the judge, and when excepted to was not withdrawn. The court was subsequently requested to charge that if the jury failed to find that McMahon was an agent of the defendants, plaintiff could not recover. To this request the court stated as follows: "I charge that, except as I have already charged, if the defendants by their conduct and their attitude and their acts led these men to believe or to give credit because of principalship of the defendants * * *." Thus the court

not merely failed to withdraw its main charge, but in effect reiterated it, evidently meaning by the instruction quoted that when the plaintiff had established an apparent agency the burden of proving lack of agency fell upon the defendants. The errors thus committed were not formal or technical, but quite substantial, and cannot be overlooked.

The court repeatedly overruled objections to offers of hearsay statements by McMahon that he was the agent of the defendants, and after such statements had been admitted refused to strike them from the record. When asked to charge that the declarations of McMahon that he was an agent were not sufficient to prove agency, the court attempted to correct its rulings by charging as follows: " I go further than you request, Judge STRATTON, and hold that they have got to find it outside of McMahon's statements that there was an agency, and that his statements are not competent evidence until you find there was agency, and then only as an element or whatever it might show in reference to the amount due for work, labor and material furnished." It does not seem to me that the errors committed in the admission of incompetent evidence were thus cured. The evidence was not stricken from the record, but was allowed to remain in, only to show, however, " the amount due for work, labor and material furnished." In the first place there was no contest over the amount thus due. In the second place the declarations of McMahon, as repeatedly given, formed no part of any bargain or any statement by him made as to the labor and material to be furnished. Thus the witness Guiles testified that after he made his bargain he asked McMahon who was going to do the paying, and " he said Paddelford and King." A motion to strike out this testimony was denied, the court stating that the statements were " not competent to prove agency * * * unless agency is established." The fact that the conversation thus admitted contained not a word except declarations of agency by the agent was apparently overlooked. The witness Martin, after he had performed his contract, stated that he asked McMahon " whose job it was and who done the paying, and he said Mr. Paddelford and Mr. King." Again, a motion to strike out was denied, although the conversation dealt only with agency. The witness Victoria V. Martin testified only to the statement

by McMahon that he was an agent. A motion to strike out was denied. The witness Guiles testified that she complained to McMahon that her husband did not get his pay, and he said " he didn't see why he shouldn't care, because Mr. Paddelford and King was paying." A motion to strike out was denied. It is conceivable that a conversation with an alleged agent in reference to the terms of a bargain or the manner of its performance might contain a declaration by him that he was an agent and yet be receivable under proper instructions, for such a conversation would contain both competent and incompetent evidence, and the two could not be separated. The court may have had such a conversation in mind when it made its comments and charge, but no such conversation was offered for admission. The admission of incompetent hearsay declarations certainly cannot be rendered harmless, when allowed to remain in the record, by judicial comment to the effect that they are receivable only to prove a fact, to which fact they have no relation whatsoever. Only the elimination of such proof, or an unqualified statement that it has no evidential value, which is tantamount to such elimination, can cure the error of its admission. Of course, there are cases where such errors might be ignored as trivial. Here errors were repeatedly made, and directly affected the one and only issue in the case. They may not be disregarded.

The judgment should be reversed and a new trial granted.

All concurred, except JOHN M. KELLOGG, P. J., dissenting, with an opinion in which LYON, J., concurred.

JOHN M. KELLOGG, P. J. (dissenting):

The judgment is so just and the defendants' liability so clear that it is quite immaterial whether or not technical errors were committed by the court upon the trial. The defendants had taken a contract for a State highway, and had given the bond required by law. Under section 43 of the State Finance Law we must assume that a clause was inserted in the specifications and in the contract prohibiting the contractor from assigning, subletting or otherwise disposing of the contract without the consent in writing of the Department, and that if the contract is sublet in violation of that section,

it may be terminated by the State, the State relieved from all liability thereon and the contractor shall lose all moneys and benefits earned thereunder " except so much as may be required to pay his employees."

The defendants' evidence as to subletting is not entirely clear. McMahon was unknown to the defendants, and without any inquiry as to his responsibility or standing they, in a way, claim to have sublet the contract to him for ninety-five per cent of the amount called for by it. They had already entered upon the performance of the contract, and had employed two of the assignors who never had any notice of the subletting. There was no written agreement with McMahon, but one of the defendants swears that he made the agreement for ninety-five per cent of the contract price; that McMahon was to take over the material on hand and the work already done, at cost; that McMahon had twenty-five men to put upon the job and he apparently had but few men, and that McMahon said he had not the ready money and he told McMahon he would take care of the payrolls and pay the expense of moving the men to the work. The payrolls from time to time were made out or submitted to the defendants, the pay envelopes prepared by them, and one of the defendants, or the wife of one of them, was present when the pay envelopes were handed out. Many workmen were paid direct by the defendants' checks, and implements required for the work were furnished or paid for by the defendants. One of the defendants says: " We have several jobs in that way; jobs that are really done under our contract but were simply sublet to outsiders to handle." I think that was this transaction. The State paid the defendants for the work; the work was done under the defendants' contract, but it was being handled by McMahon who received five per cent of the contract price therefor. Neither McMahon nor the defendants ever told any employee that McMahon had taken over the work; apparently McMahon simply took the place of McDonald who was defendants' former superintendent. I think, therefore, it was proper to show by different employees that McMahon told them he was the superintendent of the defendants and that the defendants would pay. Concededly they were paying the men. If the transaction was not merely

giving McMahon five per cent for handling the work, the parties evidently kept the subletting a secret so that there might be a subletting without danger of a forfeiture of the contract therefor. Considering the terms of the statute and all the facts in the case, the judgment is just, and if errors were committed, they could not have changed the result, and do not require a reversal. I favor an affirmance.

LYON, J., concurred.

Judgment and order reversed and new trial granted, with costs to appellant to abide event.